UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-cv-24152-GAYLES/MCALILEY

TIM HORTONS USA, INC.
and TIM DONUT U.S. LIMITED, INC.,

      Plaintiffs,

v.

TIMS MILNER LLC, et al,

      Defendants.
_____/

## ORDER ON CROSS-MOTIONS FOR PRELIMINARY INJUNCTION

Pending before the Court is Plaintiff/Counter-Defendant Tim Horton USA, Inc.'s (hereafter, "Plaintiff") Motion for Preliminary Injunction, (ECF No. 27), and Defendants/Counter-Plaintiffs Tims Milner, LLC, Tims 12 Mile LLC, Tims 8 Mile, LLC, Tims Five-Mile, LLC, Tims Greenfield, LLC, Tims Evergreen, LLC, Tims Compuware, LLC, Nicole Wilski, Jimmy Rahaim, and Baby Buford Holdings, LLC (hereafter, "Defendants") Motion for Preliminary Injunction, (ECF No. 62). The Motions have been fully-briefed. (ECF No. 29, 37, 45, 71). The Honorable Darrin P. Gayles referred the Motions to me upon the full consent of the parties. (ECF No. 49, 69, 122). The Court held an evidentiary hearing on May 13 and 14, 2019. Having carefully reviewed the parties' legal memoranda and the applicable law, and having considered the evidence presented at the preliminary injunction hearing, the Court GRANTS Plaintiff's Motion and DENIES Defendants' Motion.

I.      INTRODUCTION

Defendants are a collection of business entities and their owners and guarantors. (ECF No. 32 at ¶¶ 4-13; ECF No. 62 at 1-2). Defendant Nicole Wilski is the sole member of each of the entity Defendants. (ECF No. 32 at ¶¶ 6-13). Her husband, Defendant Jimmy Rahaim is not a member of any of the defendant entities. Mr. Rahaim, however, entered into a Guarantee, Indemnification, and Acknowledgement Agreement in connection with each of the Franchise Agreements and signed certain of the Franchise Agreements as a Guarantor. (*See* ECF No. 36 at ¶ 201). Plaintiff is the franchisor of the Tim Hortons brand and franchises restaurants throughout the United States. (ECF No. 32 at ¶ 14). In 2016, Defendants and Plaintiff and its affiliate Tim Donuts U.S. Limited, Inc. (hereafter, "Plaintiff's Affiliate") entered into Franchise Agreements and Lease Agreements (together, the "Agreements")[1] that provided for Defendants' ownership and operation of franchised Tim Hortons restaurants at seven locations in Michigan (the "Restaurants"). [2] (ECF No. 32

---

[1] The terms of the separate agreements are not identical but are sufficiently similar in all respects material to the determination of the motions for preliminary injunction. To avoid confusion and the need for repetitive citations, the Court will cite to the Franchise and Lease Agreement for Restaurant No. 3500, (Plaintiff's Exhibits (hereafter "PX")s 1, 2), as representative of the terms stated in the Agreements generally. Additionally, depending on the ownership of the premises for each of the Restaurants, Defendants entered into either a lease or sublease with Plaintiff's Affiliate. The distinction between a lease and sublease is not pertinent to the Court's determination herein. Thus, the Court will refer to the agreements between Plaintiff's Affiliate and Defendants providing for Defendants' use of the premises for the Restaurants, as the "Leases" herein.

[2] Plaintiff's Affiliate is a party to this lawsuit but has not joined in Plaintiff's Motion for Preliminary Injunction. The Lease Agreements at issue in the Motions are between Plaintiff's Affiliate and Defendant. Notably, any failure to pay monies owed to Plaintiff's Affiliate, under the Lease Agreements or otherwise, is a default under the Franchise Agreements between Plaintiff and Defendants. (*See, e.g.*, PX 1 at 1.05, 12.01). Therefore, the terms and alleged breach of the Lease Agreements are material to whether the Franchise Agreements were properly terminated.

at ¶¶ 38-73).

Each of the Franchise Agreements grants Defendants the right to operate one Tim Hortons restaurant in a specific location and to use the Tim Hortons trademarks. (*See, e.g.* PX 1 at § 1.01). In return, among other terms and conditions, Defendants agreed to pay Plaintiff royalties, advertising and other fees. (Schaefer Decl., ECF No. 96 at ¶ 41; *see, e.g.*, PX 1 at §§ 4.04 – 4.06). The royalty fee is calculated as a percentage of weekly gross sales, and is compensation for Defendants' use of Plaintiff's system and trademarks. (Schaefer Decl., ECF No. 96 at ¶ 41; PX 1 at § 4.04) The advertising fee is calculated as a percentage of monthly gross sales and provides for advertising, sales promotion, and public relations expenditures made by Plaintiff on behalf of all Tim Hortons restaurants. (Schaefer Decl., ECF No. 96 at ¶ 41; *see, e.g.*, PX 1 at §4.05).

Additionally, pursuant to the Lease Agreements, Defendants agreed to pay as rent a percentage of monthly gross sales, as well as to pay other charges associated with the leased premises, including taxes, utilities, common area assessments and charges, and other types of costs associated with the common areas of the leased premises. (Ostaszewicz Decl., ECF No. 97 at ¶ 8). Defendants, however, maintain that they reached a verbal agreement with two employees of Plaintiff prior to execution of the Agreements, that they are only required to pay rent based on a flat percentage of gross sales, and are not required to pay as additional rent all real estate taxes and assessments, sales taxes, common area maintenance charges and assessments, certain utilities, and personal property taxes (together, the "Additional Rent Amounts"). (Schaefer Decl., ECF No. 96 at ¶ 50; May 14, 2019 Hrg. Trans., ECF No. 121 at 62: 10-25).

Per the Agreements, Defendants would report gross sales on a weekly basis through an online interface. (PX 1 at § 4.04). Based on the sales reported by Defendants, Plaintiff would calculate the amounts owed and invoice Defendants for the amounts due based on reported sales. Plaintiff also invoiced Defendants for all independently calculated amounts, such as taxes, utilities, and various fees, among others. The invoices were available to Defendants through an internet-based system called "Tim Zone" used by all of Plaintiff's franchisees. (Wilski Aff., ECF No. 95-1 at ¶ 9; Ostaszewicz Decl., ECF No. 97 at ¶ 22). If Defendants disagreed with or had questions regarding an invoice, they could dispute the invoice through an online dispute system called GBS. (Wilski Aff., ECF No. 95-1 at ¶¶ 9, 12; May 14, 2019 Hrg. Trans., ECF No. 121 at 104:14-19). Each Friday, if the invoices were not timely disputed, Plaintiff would deduct the amounts invoiced from Defendants' accounts. (Wilski Aff., ECF No. 95-1 at ¶ 9).

From early in the relationship, Defendants were concerned with the accuracy of Plaintiff's accounting and billing procedures. (Wilski Aff., ECF No. 95-1 at ¶¶ 8, 11). Defendants disputed invoices through the GBS dispute system. (*Id.*). In this lawsuit, Defendants claim that many of their disputes were never addressed or resolved and that Plaintiff has, and continues to, incorrectly demand payment from the Defendants for amounts past due. (Wilski Aff., ECF No. 95-1 at ¶ 35; *see generally* Counterclaim, ECF No. 18 at ¶¶ 38-74). Ultimately, due at least in part to their issues with Plaintiff's operational systems, Defendants decided to sell the Restaurants and advised Plaintiff of such. (Wilski Aff., ECF No. 95-1 at ¶ 16). Plaintiff introduced Defendants to a potential

buyer of Plaintiff's Restaurants, Kava Restaurants, LLC ("Kava"). (Wilski Aff., ECF No. 95-1 at ¶ 17).

On or about June 19, 2018, Defendants entered into an Asset Purchase Agreement with Kava, for the sale of the Restaurants to Kava. (Wilski Aff., ECF No. 95-1 at ¶ 24). The Franchise Agreements give Plaintiff the right to approve any sale, however, before it can be final. (*See, e.g.* PX 1 at 11.02(a)). As is its standard procedure, Plaintiff conditioned its approval of the sale upon full payment from Defendants of all past-due amounts. (May 14, 2019 Hrg. Trans., ECF No. 121 at 8:14-25; *see also, e.g.* PX 1 at 11.03(b)(vii)). Defendants disputed that they owed the amounts Plaintiff sought. (ECF No. 62 at 2; May 14, 2019 Hrg. Trans., ECF No. 121 at 7:13-8:3). The sale of the Restaurants was repeatedly delayed while Plaintiff and Defendants negotiated payment of the past due amounts. (ECF No. 62 at p. 7, ¶ 7; Wilski Aff., ECF No. 95-1 at ¶¶ 25, 31). The parties were unable to reach a resolution and Plaintiff filed this action on October 9, 2018. (ECF No. 1). The next day Plaintiff issued Notices of Default to Defendants which stated that Defendants had breached the Agreements by failing to pay the past due amounts. (Schaefer Decl., ECF No. 96 at ¶ 52). The Notices gave Defendants ten days to cure their financial default, otherwise Plaintiff would terminate the Agreements. (Schaefer Decl., ECF No. 96 at ¶ 53; *see also* PXs 26-32). Defendants failed to cure the defaults during the cure period. (Schaefer Decl., ECF No. 96 at ¶ 54). On November 13, 2018, Plaintiff issued Notices of Termination of the Agreements to Defendants notifying them that the Agreements terminated effective November 12, 2018. (Schaefer Decl., ECF No. 96 at ¶ 55; *see also* PXs 33-39).

Defendants nonetheless continued to operate the Restaurants and the parties continued their efforts to negotiate a resolution of their dispute. (Wilski Aff., ECF No. 95-1 at ¶ 38). Plaintiff continued to supply Defendants with approved supplies and Defendants continued to make certain payments for rent, royalties, and ad-fund contributions. (*Id.*) The parties were unable to resolve their dispute, however, and in January 2019 Defendants ceased making any payments to Plaintiff. (Wilski Aff., ECF No. 95-1 at ¶¶ 38). Shortly thereafter, in February 2019 Plaintiff cut off Defendants' supply of approved products. (Wilski Aff., ECF No. 95-1 at ¶¶ 40). On April 25 2019, Kava terminated the Asset Purchase Agreement. (Wilski Aff., ECF No. 95-1 at ¶¶ 44). Still, Defendants continued to operate, at first with stored supplies, and later using supplies from vendors not approved by Plaintiff. (May 14, 2019 Hrg. Trans., ECF No. 121 at 82:21-85:23, 100:1-9). With the exception of one location, all of Defendants' Restaurants were still in operation as of the evidentiary hearing on May 13 and 14, 2019.[3] (May 14, 2019 Hrg. Trans., ECF No. 121 at 80:1-8).

The parties filed cross-motions for preliminary injunction now before the Court. (ECF Nos. 27, 62). Plaintiff asks the Court enjoin Defendants from using any of the Plaintiff's trademarks or service marks, and from representing the Restaurants as genuine and authorized Tim Hortons restaurants. (ECF No. 27 at 4-5). For their part, Defendants ask the Court to, *inter alia*, enjoin Plaintiff and Plaintiff's Affiliate so as to "maintain the

---

[3] The Lease on the location for Store 3500 expired after the filing of this lawsuit and that store has ceased operation. (May 14, 2019 Hrg. Trans., ECF No. 121 at 79: 7 - 80:4).

status quo" as of February 2019. (ECF No. 62 at 3-4). This would include requiring the Plaintiff to supply Defendants with approved products and permit Defendants to use Plaintiff's marks, and barring Plaintiff and Plaintiff's Affiliate from evicting Defendants from any of the Restaurants or taking any other "self-help measures designed to drive [Defendants] out of business," until the resolution of this lawsuit. (*Id*. at 4)

At the evidentiary hearing on the parties' cross-motions for preliminary injunction, Plaintiff presented testimony from Stephen Ostaszewicz and Robin Schaefer. Defendant Nicole Wilski testified for Defendants. The witnesses' direct testimony was presented through declarations and affidavits filed with the Court prior to the hearing. (*See* ECF Nos. 70 at ¶ 5; 95-97).

## II. ANALYSIS

### A. Standard for Preliminary Injunction

A district court may grant injunctive relief if the movant shows the following: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citations omitted); *see also Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005)).

A movant seeking a preliminary injunction must show a substantial likelihood of success on at least one of its claims. *Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1384 (M.D. Fla. 2005), *aff'd*, 403 F.3d 1223 (11th Cir.

7

2005). A preliminary injunction is an "extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonalds,* 147 F.3d at 1306 (citation and quotation marks omitted).

B. Plaintiff's Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction in connection with its claims for trademark infringement and false designation under the Lanham Act and breach of contract. (ECF No. 29 at 9-12). Because the Court finds that Plaintiff is entitled to a preliminary injunction in connection with its Lanham Act claims, it is not necessary to reach the breach of contract claim. *See Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1384 (M.D. Fla. 2005), *aff'd*, 403 F.3d 1223 (11th Cir. 2005) ("To obtain [] injunctive relief, [a party] must show a substantial likelihood of success on at least one claim.").

1. Plaintiff is Likely to Succeed on the Merits

The test for liability under both of Plaintiff's Lanham Act claims is the same. *Chanel, Inc. v. Besumart.com*, 240 F. Supp. 3d 1283, 1289 (S.D. Fla. 2016) (citations omitted) (the tests for liability for false designation and trademark infringement under the Lanham Act and for trademark infringement under Florida's common law[4] are the same). Plaintiff must show "(1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it "such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d

---

[4] THUSA has also brought a claim under Florida common law for trademark infringement. (ECF No. 32, at 20).

8

641, 647 (11th Cir. 2007) (citations omitted). There is no dispute that Plaintiff owns all rights to the Tim Horton's trademarks.[5]

The Eleventh Circuit has held that where a franchisor seeks a preliminary injunction against a former franchisee on a claim of trademark infringement, the franchisor must make "*some type of showing* that the franchisor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the unauthorized use of trademarks by the former franchisee." *McDonald's*, 147 F.3d at 1308 (emphasis added).[6] Defendants argue that Plaintiff has failed to make this showing because the amounts due remain in dispute, (ECF No. 37 at 9-10). They also argue that Plaintiff cannot make this showing because it failed to provide the Defendants with sufficient documentation to support the monies they claim are due, until after it terminated the Franchise Agreements, (May 14, 2019 Hrg. Trans., ECF No. 121 at 187: 4 – 193:8).

---

[5] Defendants admit the allegations contained in the second sentence of Paragraph 25 of the Amended Complaint, (ECF Nos. 36 at ¶ 25), which states that "THUSA owns, and was the first to adopt and use, the THUSA Marks as trademarks and service marks and all right, title, and interest in and to the THUSA Marks and the design, décor and image of TIM HORTONS restaurants remains vested solely in THUSA.") (ECF No. 32 at ¶ 25).

[6] At the evidentiary hearing, the parties agreed that *McDonalds* provides the standard by which this Court will determine whether it is appropriate to grant a preliminary injunction or not. (May 14, 2019 Hrg. Trans., ECF No. 121 at 173: 23-175:6; 181: 6-8). Despite their agreement that the standard enunciated in *McDonalds* applies herein, Defendants argued at the hearing and in their briefing that the injunction Plaintiff seeks, which would prohibit Defendants from operating the Restaurants and from using the Plaintiff's trademarks, is a mandatory or affirmative injunction that requires a higher level of proof. (ECF No. 37 at 7; May 14, 2019 Hrg. Trans., ECF No. 121 at 198:5 – 199: 9). The *McDonalds'* Court rejected this very argument. ("The Robertsons' attempt to characterize as mandatory the injunction at issue, which prohibits the Robertsons from operating the Blanding Boulevard restaurant and from using McDonald's trademarks, is incorrect . . . . Rather, the preliminary injunction here falls into the category of prohibitory injunctions. . . a prohibitory injunction 'restrains' a party from further action."). 147 F.3d at 1306 n.2. Defendants' argument that Plaintiff should be held to a higher burden of proof is without merit.

The Defendants do not dispute, however, that the Agreements call for their payment to Plaintiff of approximately $225,000.00 of Additional Rent Amounts, which the Defendants have refused to pay. (May 13, 2019 Hrg. Trans., ECF No. 120 at 23:25 – 24:18). The Defendants do not challenge the adequacy of Plaintiff's documentation to support these claimed amounts. Rather, they acknowledge that they have refused to make these payments, in reliance on an alleged verbal agreement they made with employees of Plaintiff, before the parties entered into the written Agreements. (May 14, 2019 Hrg. Trans., ECF No. 121 at 62:10-25, 64:19 – 65:15).

As acknowledged by Defendants, however, the Agreements clearly state that Defendants are responsible for payment of these charges, and the Agreements include integration clauses that expressly preclude the parties' reliance on any prior agreements or representations that conflict with its terms. (May 14, 2019 Hrg. Trans., ECF No. 121 at 63:1 – 64:1; *see, e.g.* PX 2 at §§ 7-9, 11, 45(f); PX 1 at § 18.02). Under Florida law, evidence of prior agreements cannot be used to vary or contradict the unambiguous language of a valid contract. *Chase Manhattan Bank v. Rood,* 698 F.2d 435, 436 (11th Cir.1983); *see also Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1343 (S.D. Fla. 1999), aff'd sub nom. *Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000). The Agreements require Defendants to pay these substantial Additional Rent Amounts, that were due as of the Notices of Default.

The Court need not determine the accuracy of every remaining charge included in the Notices of Default to resolve the preliminary injunction motions; the Additional Rent Amounts are sufficient to establish Defendants' financial default. A default notice need not

be flawless to be enforceable. "Substantial compliance [] is all that is required for notices of default, and substantial compliance exists even if the amount demanded in the default notice is incorrect." *Tim Hortons USA, Inc. v. Singh et al.*, No. 16-23041-CIV, 2017 WL 4837552, at *10 (S.D. Fla. Oct. 25, 2017) (citing *Suntrust Bank v. Ruiz*, 648 Fed. App'x 757, 760 (11th Cir. 2016)). On this record, Plaintiff has made a sufficient showing that it properly terminated the Franchise Agreements such that Defendants' continued use of Plaintiff's trademarks is unauthorized. The Court thus finds that Plaintiff is likely to succeed on the merits of its Lanham Act claims.

### 2. Plaintiff Will Be Irreparably Harmed in the Absence of an Injunction

Next, the Court must determine whether Defendants' conduct will cause irreparable injury to Plaintiff if the Court does not issue a preliminary injunction. "[G]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." *Ferrellgas Partners, LP v. Barrow*, 143 Fed. App'x 180, 190 (11th Cir. 2005) (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 805 (3d Cir. 1998)).

According to Plaintiff, Defendants' continued operation of the restaurants using the Tim Horton's trademarks will cause confusion among consumers such that any shortcomings at Defendants' restaurants will be attributed to Plaintiff. (Schafer Decl., ECF No. 96 at ¶ 59). Additionally, Plaintiff submits that if Defendants are allowed to continue operating under Plaintiff's trademarks, Plaintiff will no longer have control over the Restaurants. (*Id.* at ¶ 60).

11

Plaintiff has established that Defendants have sold unapproved products while using the Plaintiff's trademarks. Ms. Wilski testified that after Plaintiff stopped supplying the Restaurants, and her supply of approved products had run out, Defendants began to sell unapproved products. (May 14, 2019 Hrg. Trans., ECF No. 121 at 81:21-82:2).[7] Defendants have sold unapproved doughnuts, croissants, coffee, and perishable items, such as turkey, ham, and cold cuts for sandwiches. (May 14, 2019 Hrg. Trans., ECF No. 121 at 82:21 – 85:23; 100: 1-9). It is clear that Defendants are offering the public unapproved goods that Plaintiff is unable to control or regulate.

Defendants argue that Plaintiff has failed to articulate any precise injury or immediate threatened harm that it may suffer absent an injunction. (ECF No. 37 at 11-12; (May 14, 2019 Hrg. Trans., ECF No. 121 at 200: 5-24). They urge that Plaintiff has provided no concrete evidence that Defendants have fallen below Plaintiff's operational standards. This argument, however, misunderstands the standard that applies for a trademark owner to establish irreparable harm.[8] As the Eleventh Circuit stated in

---

[7] Although Ms. Wilski initially testified that she maintained a supply of authorized coffee, she later clarified that, although she still had a supply of some authorized coffee, Defendants were selling unapproved non-proprietary coffee at some of their locations. (May 14, 2019 Hrg. Trans., ECF No. 121 at 84: 11-85:23).

[8] Defendants' citation to *H2O to Go, LLC v. Martinez*, as authority that THUSA has failed to establish irreparable harm, is inapposite. (ECF No. 37 at 11; May 14, 2019 Hrg. Trans., ECF No. 121 at 199:2-202:12). The franchise agreement in that case required the parties to arbitrate any disputes, which circumscribed the court's authority to issue a preliminary injunction. Case No. 05-21353, 2005 WL 2065220 * 4 (S.D. Fla. Aug. 22, 2005) *report and recommendation adopted at H2O to Go, LLC v. Martinez*, Case No. 05-21353 at ECF No. 41 (S.D. Fla. Sept. 22, 2005) (PACER). The standard applied by the *H2O to Go* Court is not appropriate to the motions before this Court.

*Ferrellgas*, "a plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." 143 Fed. App'x at 190-91. Plaintiff has demonstrated the requisite lack of control over the reputation of the Tim Horton's franchise, and is not required to produce evidence of a specific deficient product, or operational deficiencies, to support the threat of irreparable harm. The Court finds that Plaintiff has established that it will be irreparably harmed in the absence of a preliminary injunction.

        3.      <u>The Balance of the Harms Weighs in Favor of Entry of a Preliminary Injunction in Plaintiff's Favor</u>

The Court must next determine whether the threatened injury to Plaintiff outweighs the damage an injunction might cause Defendants.

Defendants argue that Plaintiff has failed to present specific evidence that Defendants' continued operation of the Restaurants has or will harm the goodwill of the Tim Hortons brand, whereas Defendants will suffer incurable harm if the injunction is granted and they are unable to continue operating their Restaurants. (ECF No. 37 at 13). Importantly, the potential harm faced by Defendants is of their own making. Courts in this and other Circuits have found that a franchisee that has breached the terms of its franchise agreement cannot complain of the harm it would suffer if a court enjoins it from the continued use of the franchisor's trademarks. *See e.g. S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3rd Cir. 1992) (upholding preliminary injunction and finding that franchisee's "self-inflicted harm is far outweighed by the immeasurable damage done Jiffy

13

Lube by the infringement of its trademark"); *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (applying same reasoning in granting preliminary injunction).

Although a preliminary injunction may well cause Defendants to suffer financial losses, that harm is a result of Defendants' own failure to comply with the Agreements. Weighing Defendants' self-inflicted injury against Plaintiff's immeasurable losses to its hard-earned goodwill, the Court finds that the balance of harms weighs in favor of granting Plaintiff's requested injunctive relief.

      4. <u>The Public Interest is Served by Entry of a Preliminary Injunction in Plaintiffs' Favor</u>

A preliminary injunction in this case "is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace." *Davidoff,* 263 F.3d at 1304. "In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation." *Sundor Brands, Inc. v. Borden, Inc.,* 653 F. Supp. 86, 93 (M.D. Fla. 1986) (citation omitted).

Defendants argue that there is no risk of confusion because "Defendants are selling legitimate Tim Hortons branded products compliant with Plaintiff's (purportedly) strict quality control standards." (ECF No. 37 at 14). Ms. Wilski herself confirmed that this is not true, as Defendants are selling unapproved products. (May 14, 2019 Hrg. Trans., ECF No. 121 at 82:21 – 85:23; 100: 1-9). Plaintiff has shown that there is a risk of consumer

14

confusion; the granting of a preliminary injunction would not be adverse to the public interest.

In sum, Plaintiff has established the four prerequisites for a preliminary injunction and is entitled to injunctive relief.

C. Defendant's Motion for Preliminary Injunction

Defendants seek a preliminary injunction in connection with their claims that (1) Plaintiff breached the Franchise Agreements when it terminated the Agreements without good cause and (2) that Plaintiff has breached the implied covenant of good faith and fair dealing by failing to act reasonably in connection with its exercise of discretion related to the approval of the sale of the Restaurants to Kava. (ECF No. 62 at 14-16).

The Court has found that Plaintiff is substantially likely to establish that they properly terminated the Agreements. For the same reasons, the Court finds that Defendants have not shown a likelihood of success on the merits on their claim that Plaintiff breached the Agreements by terminating Defendants without good cause. Additionally, because Defendants have failed to show a likelihood of success that a specific provision of the Franchise Agreements was breached, their claim for Breach of the Implied Covenant of Good Faith and Fair Dealing also fails. The Court thus finds that Defendants have failed to establish a likelihood of success on the merits on their two claims and they are not entitled to injunctive relief.

**III. NECCESITY OF SECURITY BOND**

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction ... only if the movant gives security in an amount that the court

considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." And yet, "it is well-established that the amount of security required by the rule is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (quotation omitted). Because the Court has determined that Plaintiff is entitled to entry of a preliminary injunction in its favor, the burden of establishing a rational basis for the amount of any proposed bond rests with Defendants, who seek the security of a bond. *Medi-Weightloss Franchising USA, LLC v. Sadek*, No. 8:09-cv-2421-T-24MAP, 2010 WL 1837767, at *8 (M.D. Fla. Mar. 11, 2010).

Defendants argue that Plaintiff should be required to post a bond in the amount of $2.5 million based upon the $1.2 million value of the sale of the Restaurants under the abandoned Asset Purchase Agreement, $250,000.00 of expected total legal fees and costs expended by Defendants, and the loss of income from the Restaurants Defendants will face as a result of being enjoined. (ECF No. 106 at 5). Plaintiff argues that it should not be required to post a bond due to Plaintiff's strong financial status and clear ability to satisfy a judgment rendered against it. Defendants fail to address Plaintiff's ability to satisfy a judgment in the event that damages are awarded to Defendants.

The Court is satisfied that Plaintiff will be able to pay damages to the Defendants, should any be awarded, and thus no bond will be required. *See e.g., CITGO Petroleum Corp. v. Mid-State Energy, Inc.*, 8:12-cv-876-T-33MAP, 2012 WL 1405710, at *2 (M.D. Fla. Apr. 23, 2012) (enjoining defendants and noting that the plaintiff corporation was not

required to post a bond due to its size, financial resources, and the court's confidence that it would be able to satisfy any future judgment against it); *Burger King Corp. v. Duckrey*, 851 F. Supp. 2d 1325, 1332 (S.D. Fla. 2011) (holding that the plaintiff did not have to post a bond based on its financial status).

### IV. CONCLUSION

In sum, for the reasons stated herein, the Court **GRANTS** Plaintiff/Counter-Defendant Tim Horton USA, Inc.'s Motion for Preliminary Injunction, (ECF No. 27). Defendants/Counter-Plaintiffs Tims Milner, LLC, Tims 12 Mile LLC, Tims 8 Mile, LLC, Tims Five-Mile, LLC, Tims Greenfield, LLC, Tims Evergreen, LLC, Tims Compuware, LLC, Nicole Wilski, Jimmy Rahaim, and Baby Buford Holdings, LLC are hereby immediately restrained and enjoined from using, in connection with the advertising, promotion, and sale of any food products or services, any of Plaintiff's trademarks or service marks, and from holding the Restaurants out to the public as genuine and authorized TIM HORTONS® restaurants.

The Court **DENIES** Defendants/Counter-Plaintiffs' Motion for Preliminary Injunction, (ECF No. 62).

**DONE AND ORDERED** in Chambers in Miami, Florida, this 17th day of June, 2019.

_____
CHRIS M. McALILEY
UNITED STATES MAGISTRATE JUDGE

Copies Furnished to:
    The Honorable Darrin P. Gayles
    Counsel of Record